SAMMY JOHNSON AND VICI JOHNSON, Plaintiffs v. COLONIAL LIFE & ACCIDENT INSURANCE COMPANY, PAUL CLIFTON and FRED RAAB, Defendants

No. COA04-1515

(Filed 20 September 2005)

**1. Contracts— employment—termination for cause—issue of fact**

The trial court correctly denied summary judgment for defendant and allowed a claim for breach of an employment contract to go to the jury where the issue was whether termination was for cause; defendant contended that the termination was for making false or misleading statements on claims; and plaintiff claimed that the termination was for helping policyholders fill out claim forms. The claim was properly submitted to the jury to weigh the evidence and judge the credibility of the witnesses. Moreover, there was sufficient evidence to support the damage award.

**2. Unfair Trade Practices— breach of employment contract—aggravating factors**

The judge properly found that the breach of an employment contract, accompanied by aggravating factors, satisfied a claim under N.C.G.S. § 75-1.1 for unfair trade practices.

**3. Unfair Trade Practices— breach of contract—continuous transaction**

A defendant may not divide a breach of contract action and the conduct which aggravated the breach when in substance there is but one continuous transaction amounting to unfair and deceptive trade practices. The trial court here did not err by trebling the breach of contract damages pursuant to an N.C.G.S. § 75-1.1 claim.

**4. Unfair Trade Practices— trebled damages—prejudgment interest**

The damages to be trebled on an unfair trade practices claim are those fixed by the verdict. The trial court here erred by awarding prejudgment interest on trebled damages rather than only on the damages awarded by the jury for breach of an employment contract.

**5. Emotional Distress— intentional infliction—comments by employer—insulting and offensive—not beyond bounds of decency**

The trial court erred by submitting to the jury the issue of intentional infliction of emotional distress. The comments made to plaintiff, though insulting and offensive, do not constitute conduct which is so egregious as to go beyond all possible bounds of decency.

**6. Jurisdiction— COBRA claim—exclusively federal**

The trial court did not have subject matter jurisdiction over a COBRA claim. It is clear that except for subsections (a)(1)(B) and (a)(1)(7) of 29 U.S.C. § 1132(c)(1) the district courts of the United States have exclusive jurisdiction over these claims.

Appeal by defendant (Colonial) from judgment and order entered 6 April 2004 and orders entered 15 June 2004, by Judge Clifton W. Everett, Jr., in Pitt County Superior Court. Heard in the Court of Appeals 17 August 2005.

*Kennedy Covington Lobdell & Hickman, L.L.P., by John L. Sarratt and Ann M. Anderson, for defendant appellant.*

*The Blount Law Firm, P.A., by Marvin K. Blount, Jr., Rebecca C. Blount, and Harry H. Albritton, Jr.; and Brooks Pierce McLendon Humphrey & Leonard, by Jeffrey E. Oleynik, for plaintiff appellee.*

McCULLOUGH, Judge.

Defendant (Colonial) appeals from a superior court order awarding a jury verdict, adding interests and costs, trebling damages and making an award under COBRA, for $4,138,276.92 plus post-judgment interest. We affirm in part, vacate in part, reverse in part and remand.

Facts

Plaintiff (Mr. Johnson) was a sales representative for Colonial Life beginning in 1982 and was employed on a contractual basis. The contract provided for termination for cause. It further provided the acts which would give rise to termination for cause. One of those proscribed acts was: "Makes or knowingly allows to be made false or misleading statements on any application or claim or other document or communication submitted to Colonial."

On 29 September 1996 Mr. Johnson filed a claim giving notice to Colonial of an eye injury received on 18 August 1996. Colonial's evidence tended to show that a doctor's statement with no patient name was attached to the claim form for treatment of a facial cut. Upon investigation, Colonial found that a similar doctor's statement had been filed by another policyholder. Colonial became suspicious that Mr. Johnson had manipulated another policyholder's doctor's statement and submitted the statement with his own claim. Mr. Johnson denied having ever attached a doctor's statement to the claim that was filed in regard to his eye injury.

After the claim was filed by Mr. Johnson, a meeting was held between Mr. Johnson and Colonial representatives to discuss suspicions about the claim. At the meeting Mr. Johnson was accused of attempting to steal $198.00 from Colonial, threatened with the loss of his job, loss of medical insurance, and the filing of a report with the fraud division of the North Carolina Insurance Commissioner's Office. Along with the threat of losing his medical insurance, Mr. Johnson was told to "see how you take care of a wife with a history of cancer now."

On 8 May 1997 Mr. Johnson received a letter terminating his contract with Colonial. The letter stated that a claim had been filed for benefits and that a report had been filed of suspected fraudulent activity with the North Carolina Department of Insurance. Mr. Johnson states that the accusation of filing a fraudulent claim was not the real reason for termination of his contract, but rather that Colonial's displeasure with Mr. Johnson's assisting policyholders in filling out insurance claims was the basis. Mr. Johnson was even told by Colonial representatives prior to termination that if he did not discontinue the practice of filling out insurance claims for policyholders that he would be terminated and would lose his medical insurance.

The Johnsons filed a complaint in the Superior Court of Pitt County. Colonial then gave a notice of removal to federal court on the grounds of diversity citizenship. The case was then remanded back to superior court for lack of diversity due to the joinder of non-diverse parties. There was no objection or motion to preserve any of the claims in the federal court.

At trial Colonial made a motion for summary judgment as to all claims brought by the Johnsons. The motion was deferred until the close of the evidence upon which the trial judge entered an order denying the motion as to the issues of (1) breach of contract,

(2) wrongful termination, (3) COBRA benefits, (4) intentional infliction of emotional distress upon Mr. Johnson, (5) punitive damages, (6) negligence and gross negligence, (7) violation of N.C. Gen. Stat. § 75-1.1, (8) declaratory relief, and (9) equitable accounting.

The verdict sheet was submitted to the jury with nine issues. In the verdict sheet the jury first had to determine whether Colonial had breached its contract with Mr. Johnson. Upon answering yes to this issue, the jury was then to determine the amount of damages that Mr. Johnson was entitled to as a result of the breach. The jury was then required to determine whether Colonial had engaged in any of three aggravating circumstances related to the breach of the contract.

The jury found that Colonial had breached its contract with Mr. Johnson and that as a result he was entitled to $537,887.00. The jury also found that Colonial had engaged in two of the three aggravating circumstances associated with the breach. In addition, the jury found that Colonial had intentionally inflicted emotional distress on Mr. Johnson and awarded him $1,075,774.00 as a result.

Mr. Johnson then made a motion for trebling damages and attorneys' fees under N.C. Gen. Stat. §§ 75-1.1 and 75-16. The trial judge entered an order finding as a matter of law that where the jury found that there was a breach of contract committed by Colonial and where the jury also found that Colonial engaged in two of three aggravating circumstances associated with the breach, that Colonial had engaged in unfair and deceptive trade practices entitling Mr. Johnson to treble damages.

Judgment was entered 6 April 2004 awarding $537,887.00 for breach of contract with $297,561.02 in pre-judgment interest, these two amounts were added together and trebled for an award of $2,506,344.06. The amount of $1,075,774.00 was awarded for intentional infliction of emotional distress with $414,984.68 in pre-judgment interest, $1,900.00 for COBRA violations in respect to Mr. Johnson with $734.00 in interest, and $73,000.00 for COBRA violations with respect to Mrs. Johnson with $28,160.00 in interest. Costs were also awarded in the amount of $37,380.18. The total damages awarded were $4,138,276.92 along with any post-judgment interest.

Colonial then made a motion to alter or amend the judgment based on the order trebling the pre-judgment interest on the breach of contract award which was denied by the trial judge in order entered 15 June 2004. Colonial also made a motion for judgment

notwithstanding the verdict, or, in the alternative, for a new trial, which was also denied in order entered 15 June 2004.

Colonial now appeals.

I

**[1]** In its first argument on appeal, Colonial contends that the trial court erred in submitting the issue of breach of contract to the jury and further that there is insufficient evidence to support the damages awarded. We disagree.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). On a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party." *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998) (citation omitted). When determining whether the trial court properly ruled on a motion for summary judgment, this court conducts a *de novo* review. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).

In the instant case, Colonial motioned for summary judgment as to all of the Johnsons' claims. Mr. Johnson claimed that the termination of his employment contract was a breach in violation of the terms of the contract. Both parties agreed that the contract was valid and that termination could only be made for cause. The question in contention was whether the termination was for cause. Colonial contends that the reason for termination fell within the following term of the contract: "Makes or knowingly allows to be made false or misleading statements on any application or claim or other document or communication submitted to Colonial." Mr. Johnson on the other hand claims that he never filed the false or misleading claim which Colonial has accused him of doing, but rather that this is a mere pretext for the actual reason he was fired. Mr. Johnson instead presented evidence showing Colonial's dissatisfaction with his practice of helping policyholders fill out claim forms as the reason for termination and evidence of threats made by Colonial representatives to fire him

if he did not discontinue this practice. Where there was a genuine issue as to a material fact, whether or not there was a breach, the claim for breach of contract was properly submitted to the jury to weigh the evidence and judge the credibility of the witnesses. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003), (holding that summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist), *aff'd per curiam*, 358 N.C. 137, 591 S.E.2d 520, *reh'g denied*, 358 N.C. 381, 597 S.E.2d 129 (2004).

Colonial also contends that there was insufficient evidence to support the breach of contract damages found by the jury. The gravamen of this argument is that Colonial would have preferred that the jury accept their evidence as to mitigation instead of accepting the evidence presented by the Johnsons. However, it is evident after reviewing the record that there was sufficient evidence to support the breach of contract damages awarded by the jury.

## II

Next, Colonial contends that the trial court erred in the following three determinations:

A. In determining that there was a violation of N.C. Gen. Stat. § 75-1.1. We disagree.

B. In trebling the breach of contract damages pursuant to an N.C. Gen. Stat. § 75-1.1 claim. We disagree.

C. In trebling the pre-judgment interest before awarding damages. We agree.

## A

**[2]** " '[I]t is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.' " *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367-68, 533 S.E.2d 827, 832-33 (citation omitted), *cert. denied*, 353 N.C. 262, 546 S.E.2d 93 (2000). Thus, "plaintiff must show 'substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages.' " *Id.*

The verdict sheet as submitted to the jury first asked the jury to find whether there was a breach of contract. Immediately following

the breach of contract claim the verdict sheet asked the jury to determine whether Colonial engaged in one of the following actions:

1. Failed to adequately investigate the allegation that Sammy Johnson submitted a false or fraudulent claim before submitting a fraud report to the North Carolina Department of Justice.

2. Colonial submitted, without knowing or having reasonable cause to believe, a report to the North Carolina Department of Insurance concerning Sammy Johnson.

3. Wrongfully used the accusation of a false claim as a pretext for terminating Sammy Johnson when there was otherwise no cause, as defined in the contracts.

The jury returned the verdict finding aggravating factors 1 and 3 from the verdict sheet to be present. Mr. Johnson presented evidence that false accusations were deceptively made against him as a pre-text forming the basis of termination and the jury agreed. Therefore, where the jury found that there was a breach of contract accompanied by aggravating factors, it was proper for the judge to conclude as a matter of law that a claim under N.C. Gen. Stat. § 75-1.1 had been satisfied.

## B

[3] The amount to be trebled is "the amount fixed by the verdict." N.C. Gen. Stat. § 75-16 (2003). The only damages that may be trebled are those which are proximately caused by a violation of N.C. Gen. Stat. § 75-1.1. *See Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 529 S.E.2d 676, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000). However, "Where the same course of conduct gives rise to a traditionally recognized cause of action, as, for example, an action for breach of contract, and as well gives rise to a cause of action for violation of G.S. 75-1.1, damages may be recovered either for the breach of contract, or for violation of G.S. 75-1.1 . . . ." *Marshall v. Miller*, 47 N.C. App. 530, 542, 268 S.E.2d 97, 103 (1980), *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981).

Colonial argues that there should be a division of the breach of contract action and the § 75-1.1 claim. However, as evidenced by the jury verdict, the breach of contract accompanied by aggravating factors is what gave rise to the § 75-1.1 claim. Moreover, the court will not allow a defendant to divide the breach of contract action and the

conduct which aggravated the breach when in substance there is but one continuous transaction amounting to unfair and deceptive trade practices. *See Garlock v. Henson*, 112 N.C. App. 243, 435 S.E.2d 114 (1993) (holding that where there was a breach of contract accompanied by aggravating factors that it was proper to treble the breach of contract damages).

## C

[4] Pre-judgment interest may be awarded on compensatory damages for breach of contract. N.C. Gen. Stat. § 24-5(a) (2003). However, according to N.C. Gen. Stat. § 75-16, *inter alia*, the amount of damages to be trebled are those fixed by the verdict. Moreover, damages for unfair and deceptive trade practices under North Carolina law are awarded as a penalty rather than to compensate. *See Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 338 S.E.2d 918, *disc. review denied and cert. denied*, 316 N.C. 378, 342 S.E.2d 896 (1986). This Court has held that a pre-judgment interest award should not attach to the trebled damages, but only to the actual damages awarded for the breach of contract that was found to be an unfair trade practice. *See Sampson-Bladen Oil Co. v. Walters*, 86 N.C. App. 173, 179, 356 S.E.2d 805, 809, *disc. review denied*, 321 N.C. 121, 361 S.E.2d 597 (1987).

The federal courts of this district have suggested that where the North Carolina Supreme Court held in *Custom Molders, Inc. v. American Yard Products, Inc.*, 342 N.C. 133, 463 S.E.2d 199 (1995), that post-judgment interest could be added to the trebled damages, that in turn the same reason follows for pre-judgment interest. However, this Court is bound by our prior decisions and these decisions can only be overcome by the North Carolina Supreme Court.[1]

In the instant case, the trial judge awarded pre-judgment interest on the trebled damages rather than the actual damages awarded by the jury for breach of contract. This was error. Mr. Johnson was only entitled to pre-judgment interest on the breach of contract damages, not the damages arising out of the unfair and deceptive practices claim. Therefore the award of damages should be reduced.

---

1. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

## III

**[5]** Colonial next contends that the trial court erred in submitting to the jury the issue of intentional infliction of emotional distress. We agree.

"The essential elements of an action for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.' " *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Guthrie v. Conroy*, 152 N.C. App. 15, 22, 567 S.E.2d 403, 408-09 (2002) (citation omitted). The determination of whether conduct rises to the level of extreme and outrageous is a question of law. *Id.* at 21, 567 S.E.2d at 408.

The evidence presented at trial as to extreme and outrageous conduct consisted of several meetings over a course of time in which threats to Mr. Johnson were made concerning losing his job and health insurance and accusations in regard to submitting a false claim. These comments, although insulting and offensive to Mr. Johnson, do not constitute conduct which is so egregious as to go "beyond all possible bounds of decency." *See Guthrie*, 152 N.C. App. at 22, 567 S.E.2d at 409 (holding that "mere insults, indignities, and threats" are not extreme and outrageous acts). Therefore, as a matter of law, the trial judge erred in submitting the intentional infliction of emotional distress claim to the jury where the evidence failed to show extreme and outrageous conduct.

## IV

**[6]** Lastly, Colonial argues that the trial court did not have subject matter jurisdiction over the COBRA claim. We agree.

Lack of subject matter jurisdiction may always be raised by a party, or the court may raise such defect on its own initiative, even after an answer has been filed. *See Jackson Co. v. Swayney*, 75 N.C. App. 629, 331 S.E.2d 145 (1985), *aff'd in part and rev'd in part on other grounds*, 319 N.C. 52, 352 S.E.2d 413, *cert. denied*, 484 U.S. 826, 98 L. Ed. 2d 54 (1987). COBRA claims are governed by 29 U.S.C. § 1132 (2005). The code provides that as to jurisdiction:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have **exclusive** jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 101(f)(1)[29 USCS § 1021(f)(1)]. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

29 U.S.C. § 1132(e)(1) (emphasis added).

In the instant case, the COBRA action was brought under 29 U.S.C. § 1132(c)(1) to enforce the late-notice penalties. The case was removed to federal court and then remanded in its entirety due to lack of complete diversity jurisdiction. It is clear that except for subsections (a)(1)(B) and (a)(1)(7) "the district courts of the United States have **exclusive jurisdiction**" over civil actions brought under this section. 29 U.S.C. § 1132(e)(1) (emphasis added). Therefore the trial court lacked subject matter jurisdiction over the COBRA claim.

Accordingly, we affirm the trial court with respect to breach of contract, breach of contract damages, and § 75-1.1 claim and damages. We vacate the trial court's decision with respect to intentional infliction of emotional distress and damages pursuant to that claim and assertion of jurisdiction over the COBRA claim. We reverse the trial court on the issue of trebling pre-judgment interest and remand to the trial court to enter an amount of damages in accordance with this opinion.

Affirmed in part, vacated in part, reversed in part, and remanded.

Judges TYSON and BRYANT concur.